**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINDA DENSBERGER,** | : | **Civil No.  1:20-CV-772** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW M. SAUL** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

## I.    Introduction

Linda Densberger's Social Security appeal presents a striking set of circumstances. The plaintiff applied for disability benefits in April of 2017, alleging that she had been disabled since 2012 due to obesity, degenerative disc disease, asthma, chronic obstructive pulmonary disease, and fibromyalgia. Densberger submitted medical records from her caregivers that confirmed these diagnoses while also documenting a series of relatively benign medical findings. However, notably missing from these records was any medical opinion stating that Densberger was disabled. Thus, there is no indication in the administrative record that these treating sources—or any other medical professional—have deemed Densberger to be disabled as a result of her medical impairments. Quite the contrary, the only medical

1

opinion evidence was provided by two state agency experts, who opined that Densberger was capable of performing light work and did not suffer from any emotional impairments which prevented her from working.

While the existing opinion evidence supported a finding that Densberger could perform light work, the ALJ afforded the plaintiff every reasonable benefit of the doubt, and concluded that she was confined to a limited range of sedentary work. However, even after resolving a number of factual issues in a manner which was favorable to Densberger, the ALJ found that there were a significant number of sedentary jobs in the national economy she could perform and denied her claim.

Densberger now appeals this decision, arguing that the ALJ's evaluation of the medical evidence and assessment of the disabling effect of her obesity were not supported by substantial evidence. Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

II.   **Statement of Facts and of the Case**

Linda Densberger applied for Social Security disability benefits in April of 2017 alleging that she was totally disabled due to obesity, COPD, fibromyalgia, and degenerative disc disease. (Tr. 15, 17, 116-24). Densberger was in her 40's at the time of this disability application. (Tr. 22). She had a high school education and some college, and previously had been employed as a bartender and manager. (Tr. 33, 45).

The medical records submitted in support of Densberger's disability application were notable in several respects. First, those records confirmed medical diagnoses for the conditions which Densberger had listed as her impairments. Thus, Densberger undeniably suffered from obesity since the plaintiff, who was 5 feet, 6 inches tall, had a weight which fluctuated up to 298 pounds and a body mass index (BMI) in excess of 40, well within the clinical benchmarks for obesity. (Tr. 263). Densberger had also been diagnosed at various times with COPD, degenerative disc disease, and fibromyalgia. (Tr. 189-200, 209, 279-648).

While these records confirmed Densberger's diagnoses, her medical history did not reveal that these conditions had the degree of disabling severity claimed by the plaintiff. Thus, a January 2017 MRI examination revealed only mild to moderate disc disease. (Tr. 209). Moreover, treatment records from multiple health care

3

providers consistently reported a series of relatively minor, unremarkable, or benign findings in terms of Densberger's strength, gait and reflexes. (Tr. 256, 279, 335-96, 406, 409-515, 516-648).

These medical records were noteworthy in one other respect. No physician who examined or treated Densberger opined that her medical conditions were disabling. Thus, the administrative record was devoid of any clinical or opinion evidence that supported Densberger's disability claim.

There was, however, opinion evidence which refuted that claim. Specifically, two state agency experts, Dr. Coyle and Dr. Butcofski, reviewed Densberger's medical records and evaluated her physical and emotional fitness to work. (Tr. 52-62). Dr. Coyle, the state agency psychologist, concluded that Densberger faced no emotional impairments that would prevent her from working. (Id.) Dr. Butcofski, in turn, acknowledged Densberger's physical impairments but concluded that notwithstanding these impairments, she could perform light work. (Id.)

It was against the backdrop of this medical record that a hearing was held on Densberger's disability application on October 23, 2018. (Tr. 28-51). At the hearing, both Densberger and a Vocational Expert testified. (Id.). Following this hearing on January 28, 2019, the ALJ issued a decision denying Densberger's application for benefits. (Doc. 12-27). In that decision, the ALJ first concluded that Densberger had

not engaged in gainful activity since April of 2017. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Densberger suffered from severe impairments including degenerative disc disease, obesity, asthma, COPD, and fibromyalgia. (Tr. 17). At Step 3, the ALJ determined that Densberger did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 18-19).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity (RFC), considering Densberger's limitations from her impairments, which stated that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she can engage in no pushing or pulling with the lower extremities; must have the option to change from sitting to standing and back at least every half hour, while remaining on task; may occasionally balance, stoop, crouch, crawl, and kneel; can climb ramps and stairs but never ladders, ropes, or scaffolds; must avoid concentrated exposure to temperature extremes of cold and heat, humidity, vibrations and hazards including moving machinery and unprotected heights; and avoid moderate exposure to fumes, odors, dusts, gases and poor ventilation.

(Tr. 19).

In reaching this RFC determination for Densberger, the ALJ gave great consideration to the ways in which her obesity limited her physical activity. At the

outset, the ALJ found Densberger's obesity to be a severe impairment at Step 2. (Tr.

17). At Step 3 the ALJ then observed that:

> While neither the claimant nor her representative argued that obesity
> was a disabling condition at her hearing, the medical record shows that
> her body mass index was consistently over 40, which, in the absence of
> contradictory evidence, supports a determination that the claimant is
> obese. Additionally her treatment records from Berwick Medical
> Professionals diagnose the claimant with this condition (8F/2, 5, 8).
> Pursuant to SSR 02-lp, when there is evidence of obesity in the medical
> record, we will evaluate it as a condition. including evaluating how it
> might aggravate other diagnosed conditions. However, even in
> conjunction with obesity, none of the claimant's conditions meet any of
> the Listings.

(Tr. 19). The ALJ also expressly considered Densberger's obesity when fashioning

her residual functional capacity, stating:

> [W]hen there is evidence of obesity in the record, we will evaluate this
> as a condition. Generally. a BMI of 30 or above is regarded as "obese,"
> absent evidence to the contrary. In the earliest portions of the record,
> the claimant's BMI is recorded as 41 (1F/3). and earlier this year (2018)
> was recorded as being over 45 (8F/72). This condition is being
> considered in evaluating the claimant's residual functional capacity.

(Tr. 20).

Ultimately, this medical condition factored into the ALJ's RFC

assessment. As the ALJ noted:

> Overall, the credible symptoms of pain and weakness from the
> claimant's *obesity*, degenerative disc disease. sacroiliitis, and
> fibromyalgia restrict the claimant to sedentary work. Moreover, she
> cannot engage in pushing or pulling with the lower extremities; must
> have the option to change from sitting to standing and back at least

> every half hour, while remaining on task; may occasionally balance,
> stoop, crouch, crawl, and kneel; can climb ramps and stairs but never
> ladders, ropes, or scaffolds. She also must avoid concentrated exposure
> to vibrations and hazards including moving machinery and unprotected
> heights.

(Tr. 21) (emphasis added).

The ALJ also carefully weighed the meager clinical and opinion medical

evidence on the record. In the absence of any medical opinion evidence supporting

Densberger's claim of disability, the ALJ evaluated the state agency expert opinions.

According to the ALJ's decision:

> We fully considered the medical opinions and prior administrative
> medical findings in your case as follows: The state-agency
> psychological evaluator opined that the claimant's mental health
> symptoms were non-severe. This opinion is very persuasive, as it is
> consistent with the lack of specific mental health treatment in the
> record. The state-agency physical evaluator assigned limitations
> consistent with light duty. This opinion is only somewhat persuasive.
> The evaluator accounts for the claimant's postural and environmental
> limitations, however, this evaluator did not have access to the claimant's
> most recent medical records, . . . . These records indicate that the
> claimant's condition is worse than this evaluator assessed. consistent
> with sedentary work.

(Tr. 21).

Thus, in weighing this medical opinion evidence as it related to her physical

impairments, the ALJ afforded Densberger the benefit of very reasonable inference

in her favor and fashioned an RFC that was more restrictive than the state agency

doctors' opinions. However, even after arriving at this favorable RFC assessment

7

for Densberger, based upon a thorough evaluation of the medical record the ALJ found that there were a substantial number of jobs in the national economy that she could perform. (Tr. 22-23). Accordingly, the ALJ concluded that Densberger did not meet the stringent standard for disability set by the Act and denied this disability claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Densberger contends that the ALJ's decision is not based on substantial evidence required under 42 U.S.C. § 405(g) because: (1) the ALJ erred in fashioning an RFC that was not expressly supported by a medical opinion, and (2) the ALJ failed to adequately consider her obesity in making this disability determination. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, the Commissioner's final decision is affirmed.

## III.   **Discussion**

### A.   **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the

9

agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>,
305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
deleted). And whatever the meaning of "substantial" in other contexts,
the threshold for such evidentiary sufficiency is not high. Substantial
evidence, this Court has said, is "more than a mere scintilla." <u>Ibid</u>.; <u>see,
e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
omitted). It means—and means only—"such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."
<u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v.
Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
(comparing the substantial-evidence standard to the deferential clearly-
erroneous standard).

<u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application

of the relevant law.  <u>See</u> <u>Arnold v. Colvin</u>, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence.") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F.

Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of

a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v.

Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review

of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

11

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant

is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).    In  making  this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical

13

opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay

14

assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

16

for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   **Legal Benchmarks for Assessing a Claimant's Obesity**

The interplay between this deferential substantive standard of review, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is aptly illustrated by those cases which consider analysis of the compounding effect of obesity upon disability claimants. In this regard, the leading case addressing this issue is Diaz v. Comm'r of Soc. Sec., 577 F.3d 500 (3d Cir. 2009). In Diaz, the ALJ found at Step 2 of the analytical process that Diaz's obesity was a severe impairment, but then neglected to address the exacerbating effect of this condition at Step 3 or in any other subsequent steps in the disability analysis.

On these facts, the Court of Appeals remanded the case for further consideration by the Commissioner and provided guidance regarding the duty of articulation required from ALJs in this setting. Thus, the Court of Appeals explained that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 504. While imposing this responsibility of articulation upon ALJs, the appellate court did not endeavor to

17

impose some strict formulaic requirements upon these administrative adjudicators. Quite the contrary, the Court made it clear that "[t]he ALJ, of course, need not employ particular 'magic' words: '[Case law] does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.' " Diaz, 577 F.3d at 504 (citations omitted).

The Court of Appeals also made it abundantly clear that its decision related to the ALJ's duty to adequately articulate the rationale underlying any decision denying benefits and did not in any way alter the very deferential substantive standard of review in these cases. As the Court noted,

> Were there *any* discussion of the combined effect of [obesity upon] Diaz's impairments, we might agree with the District Court [and affirm the ALJ decision]. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function.

Diaz, 577 F.3d at 504 (emphasis in original). By noting that "*any* discussion of the combined effect of [obesity upon] Diaz's impairments" would have been sufficient, the appellate court underscored the continuing vitality of the deferential standard of review that applies in these cases.

Thus, fairly construed, Diaz holds that where an ALJ has defined a claimant's obesity as a severe impairment at Step 2 of this analysis, there is a basic duty of articulation that is owed the claimant, explaining how that obesity affects the issue

18

of disability. However, once that duty of articulation is met, the substantive standard of review remains highly deferential. Applying this analytical paradigm, following <u>Diaz</u> it has been held that a single cursory assurance that an ALJ has considered a claimant's obesity may be insufficient to satisfy the requirement that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." <u>Diaz</u>, 577 F.3d at 504; <u>see also</u> <u>Sutherland v. Berryhill</u>, No. 3:17-CV-00124, 2018 WL 2187795, at *9 (M.D. Pa. Mar. 6, 2018), <u>report and recommendation adopted sub nom. Sutherland v. Berryhill</u>, No. CV 3:17-0124, 2018 WL 2183359 (M.D. Pa. May 11, 2018). However, a statement by an ALJ in a decision denying benefits that the ALJ has "considered any additional and cumulative effects of obesity," when coupled with even a brief factual analysis of the medical evidence as it relates to obesity and impairment is sufficient to satisfy this duty of articulation. <u>Cooper v. Comm'r of Soc. Sec.</u>, 563 F. App'x 904, 911 (3d Cir. 2014). Further, when an ALJ considers the role of a claimant's obesity, evaluating it within the context of the overall record, consistent with the appropriate guidelines, this duty is satisfied. <u>Woodson v. Comm'r Soc. Sec.</u>, 661 F. App'x 762, 765 (3d Cir. 2016). Finally, this responsibility is met when the ALJ explicitly considers the claimant's obesity when assessing that claimant's residual functional

capacity. <u>Hoyman v. Colvin</u>, 606 F. App'x 678, 680 (3d Cir. 2015). <u>Medina v. Berryhill</u>, No. 3:17-CV-1941, 2018 WL 3433290, at *6–7 (M.D. Pa. June 8, 2018), <u>report and recommendation adopted,</u> No. CV 3:17-1941, 2018 WL 3426408 (M.D. Pa. July 16, 2018).

### D.     **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

Densberger filed her disability application in April of 2017 shortly after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March 0f 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u> ("<u>Revisions to Rules</u>"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), <u>see</u>

20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she

21

considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June

10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

It is against these legal benchmarks that we assess the instant appeal.

### E.    The ALJ's Decision in this Case is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Densberger was not disabled. Therefore we will affirm this decision.

23

At the outset, Densberger's complaints regarding the evaluation of the medical opinion evidence are unavailing. On this score, Densberger seems to contend that the RFC derived in this case was fundamentally flawed because it was not supported by any specific medical opinion.

This contention fails for at least three reasons.

First, Densberger's argument ignores basic, longstanding legal tenets governing judicial review of ALJ evaluation of medical opinion evidence. The question of disability is a legal determination, and is not wholly dictated by medical opinions. Thus, "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Further, in making this assessment of medical opinion evidence: "An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion." Durden, 191 F.Supp.3d at 455. Finally, when there is no evidence of any credible medical opinion supporting a claimant's allegations of disability it is also well settled that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129F. Supp.3d at 214–15.

Second, Densberger's argument fails to consider a stark truth. The evidence Densberger presented at this hearing was entirely devoid of any medical opinion

supporting her claim of disability. Instead, there was significant countervailing opinion and clinical evidence which clearly indicated that the plaintiff could perform some work. In this setting, where the plaintiff has failed before the ALJ to support her claim of disability with any competent medical opinion evidence, courts have routinely rebuffed arguments that the ALJ erred in rejecting what was a factually unsupported claim of total disability. See e.g., Naomi Rodriguez v. Berryhill, No. 1:18-CV-684, 2019 WL 2296582, at *1 (M.D. Pa. May 30, 2019); Woodman v. Berryhill, No. 3:17-CV-151, 2018 WL 1056401, at *1 (M.D. Pa. Jan. 30, 2018), report and recommendation adopted, No. 3:17-CV-151, 2018 WL 1050078 (M.D. Pa. Feb. 26, 2018); Patton v. Berryhill, No. 3:16-CV-2533, 2017 WL 4875286, at *1 (M.D. Pa. Oct. 12, 2017), report and recommendation adopted in part, No. 3:16-CV-2533, 2017 WL 4867396 (M.D. Pa. Oct. 27, 2017).

Finally, Densberger's argument discounts the fact that the RFC in this case was far more favorable to the plaintiff than the state agency expert opinion, which concluded that she could perform light work. In short, by arriving at a limited sedentary work RFC in this case, the ALJ construed the record in a fashion that was highly favorable to the plaintiff but was still found that she could work. Densberger may not now be heard to complain that this favorable RFC assessment, which found that her impairments exceeded any medical opinion, was unfairly prejudicial.

In any event, it is apparent that the ALJ's decision in this case faithfully applied the current medical opinion evaluation regulations. The ALJ carefully examined the sparse medical opinion evidence, evaluated its consistency with the clinical record and its persuasiveness, and concluded that the medical opinion was entitled to some weight while imposing greater limitations upon Densberger than those found by the state agency expert. There simply was no error here.

Likewise, the ALJ's evaluation of Densberger's obesity fully complied with the dictates of the law. In this regard, the ALJ correctly concluded that Densberger's obesity was a severe impairment at Step 2 of this sequential analysis. The ALJ then expressly considered this obesity throughout the disability sequential analysis, addressing her obesity at Step 3; discussing this obesity when framing an RFC for Densberger; and explicitly referring to her obesity when making the ultimate disability determination in this case. In our view, this analysis met the burden of articulation demanded by the courts. It considered the role of Densberger's obesity, evaluating it within the context of the overall record, consistent with the appropriate guidelines; Woodson v. Comm'r Soc. Sec., 661 F. App'x 762, 765 (3d Cir. 2016), and explicitly considered her obesity when assessing her residual functional capacity. Hoyman v. Colvin, 606 F. App'x 678, 680 (3d Cir. 2015). This decision also satisfied the ALJ's duty of articulation by combining an assurance that the ALJ

26

has considered any additional and cumulative effects of obesity in this analysis with a factual discussion of the medical evidence as it relates to both to Densberger's obesity and her medical impairments. Cooper, 563 F. App'x at 911. Moreover, substantial evidence supported the findings made by the ALJ with respect to Densberger's obesity and her ability to perform a limited range of sedentary work notwithstanding her impairments.

In sum, in this case the ALJ was confronted by a sparse medical record devoid of any clinical or opinion evidence which supported this disability claim. On these facts, the ALJ found that Densberger had not met the stringent standard for disability set by law. It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence supported the ALJ's decision in the instant case. Thus, at bottom, it appears that Densberger is requesting that this Court re-weigh the evidence. This we may not do. See, e.g., Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder'")). Because we cannot re-weigh the evidence, and because we find that the ALJ properly articulated that substantial evidence did not support this disability claim, we will affirm the ALJ's decision in this case.

27

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

March 29, 2021